When you're ready. May it please the Court, my name is Sean Unger and I represent Appellant William Aholelei. The Eighth Amendment creates affirmative obligations on behalf of prison officials. When a prison official knows that a group of prisoners pose a specific risk or general risk to another group of prisoners, that prison official must respond. They must act to quell the risk. Here, Appellant William Aholelei submitted substantial evidence in opposition to Defendant's motion for summary judgment. That evidence confirmed that the policy at Hollowa Correctional Facility of segregating, concentrating, and isolating known gang members into residential wards had the effect of exposing all non-commonly housed gang members to an increased threat of violence. And he can recover damages upon a showing of deliberate indifference, is that standard? That is correct, and that is the right that was invoked. The District Court erred in three ways in this case, Your Honor, granting Defendant's motion for summary judgment. First, it erred in granting the individual Defendant's qualified immunity on the Eighth Amendment claim. They were not entitled to such immunity, having liability, as you noted, for deliberate indifference after knowledge of the failure of the segregation policy. Second, the District Court erred in granting all Defendants sovereign immunity for the suit against them in their official capacity, as that right had been waived by the Defendant's participation in the litigation. And third, the District Court erred in finding that the claims by Mr. William, by Appellant Aholelei for injunctive relief were moot based on his transfer and subsequently his parole. Are you saying that his parole does not moot the injunction issue? As we discussed in our briefs, Your Honor, there is, and we must concede that there is, Ninth Circuit law that says that the transfer or parole of a prisoner will moot his claims for injunctive reliefs. But that rule is not uniformly held in the Ninth Circuit and is not uniformly held in the sister circuits either, that there is Ninth Circuit case law. We cited a case called Diamantene that holds that the parole will not necessarily moot a claim. And that case cites, too, a case called Morales out of the Seventh Circuit, which discusses the likelihood or possibility, remote or otherwise, of return to prison as a grounds for not mooting a claim. And that idea was at least discussed not in a case on all fours, but another case within this circuit called Armstrong. So there is a conflict in this Court's jurisprudence about whether it is an absolute rule or not. We suggest that there is a way to carve a fine line and make a definite rule within the Court, which is to look at the right invoked, the cases that the State cites for the qualified immunity or, excuse me, for the mootness point, Dilley v. Gunn and Daring v. Kinnitchell. If you look at the facts of those cases, what was alleged were access questions, whether they could get to the library to file court papers, whether they bad. That is to say, he has to violate conditions of parole so he's reincarcerated or he has to reoffend so that he's convicted and reincarcerated. As I read Lyons v. City of Los Angeles, they hold that it was moot because in order for Mr. Lyons to seek injunctive relief against the use of the chokehold in that case, he had to do something that was going to draw the police attention to them, and that was within his control. As far as I'm concerned, speaking only for myself, your mootness claim on the injunction is a loser. That may — I appreciate your candor in the matter, Your Honor, but what I would say is that in Armstrong, this Court also recognized that a return to prison based on parole doesn't necessarily require a prisoner to do something bad. And indeed, if you look at the supplemental excerpt of record that the State submitted as to the terms of Mr. O'Hole life's parole, he can be returned to prison for conduct that is not criminal and for which he's ignorant. He can be returned to prison for not knowing but consorting with other individuals who were gang members or were — who themselves are convicts. I think the guts of your case are elsewhere. I didn't mean to get you swallowed up in that. I really think you've got a more important issue that you need to talk about. I also agree, Your Honor, and I'd like to return to that point, which is the qualified immunity argument against the defendants in their individual capacity. As I see it, the district court committed four errors in granting the defendants in their individual capacity summary judgment. The first is a confusion at the right at issue. As you, Judge Fletcher, recognize, the right that was invoked was deliberate indifference. The district court construed that right as Mr. O'Hole seeking to define with whom he resided. That's not quite right. What Mr. O'Hole tried to invoke was his right to be free from a known threat of violence. And here, the evidence that he submitted suggested that the policy at Holiwa of segregating non-gang members — excuse me, segregating gang members and then commonly housing them with non-gang members exposed them to an increased threat of violence. That right at issue, the deliberate indifference right, and the general risk of violence to an identifiable group has been confirmed by this Court in Hearns, by this Court in Robinson, and by this Court in — excuse me, by the Supreme Court in Farmer. One of the troubles I have with the case in its current posture is that the district judge considered only some of the evidence proffered by your client. Mr. — is it Holilai? Is that how you should pronounce it? That's how I pronounce it. Yeah. Considered only some of the evidence proffered by Mr. Holilai in opposition to summary judgment, even though there was other evidence that had it been considered, would have strengthened his case against summary judgment. He was at that point, of course, pro se. Correct. And this may not be something that you can answer, but I'll ask it anyway. If we were to remand the district court with a direction that it shouldn't consider this additional evidence and potentially open the record for further discovery, do you know if he would be represented at the district court either by your firm or by someone else? I know that the terms of the pro bono appointment in this Court requires our continuance through the appeal. I don't know if my firm would be interested in continuing. I tend to doubt that we would represent Mr. Holilai at trial. Your base is here or Hawaii? What's that? Your office is here or Hawaii? It's in San Francisco. It's down the street. Okay. But that said, if Mr. Holilai, who is now out on parole and has greater access to attorneys and was presented with a case where this Court reversed a grant of summary judgment, it would be far more likely that he could find counsel, private or otherwise, in Hawaii now that he can freely traverse the streets of Hawaii. Yeah. Well, I'll be as forthright as I can be here. I'm considering the possibility not of outright reversal but of remand to allow the district judge to consider the full range of activity to allow Mr. Holilai to put it into a form in which the district judge can take cognizance of it or perhaps direct the district judge to take cognizance of it. No, I'm not. In terms of my question, I'm not contemplating a reversal so much as a remand, which may or may not affect the availability of counsel and so on. At this point, it would be a process of prediction. Yeah, yeah, sure. No, I think you answered as well as you could. I understand. Thank you. You've got to one of the four errors that I thought dictated reversal or, in this case, depending on what the Court decides, remand of the case for consideration of the qualified immunity point, which is that the district court did not consider all of the evidence, and Mr. Holilai did submit substantial evidence. And there is at least some sense, as we submitted in our request for judicial notice, that there may be additional evidence that could be submitted before the district court. Could you at some point talk about how particularized the information coming to an individual defendant has to be in order for there to be liability here? Yes, Your Honor. And I think that actually is two questions, one as to the qualified immunity point and two as to the sovereign immunity point. We believe that sovereign immunity has been waived, so the totality of the evidence as to the state could give rise to liability. I think you're probably right on that one, and I'm more concerned about the other one. As to that, Your Honor, I think that under Berg and as confirmed by Lear, there has to be a particularized showing as to each defendant. Now, that's a trial showing, not necessarily a summary judgment showing. And we would submit, Your Honor, that under Moreno, that the nine of the ten defendants have submitted no evidence, and thus the burden never shifted to Mr. Ohololai to come forward with any evidence on the summary judgment standard. But ultimately at trial, Mr. Ohololai will have to confirm that each of the defendants he sues had knowledge and that they remained indifferent to the risk after knowledge. It does bear on some level that nine of the defendants were listed as percipient witnesses on the State's own witness list it submitted, which we, again, suggest gives rise to the waiver of sovereign immunity. Do you think it's enough if the individuals who are defendants knew that there were problems with the policy as opposed to do they have to have knowledge that your plaintiff is in trouble? I think, Your Honor, that's a question, and that's actually one of the other errors that the district court made. There is no specific notice requirement when the risk is general. So all similarly situated non-gang members who are exposed to a threat faced injury, and injury that could give rise to liability. That was confirmed in Hearns. That was confirmed in Berg. And that also the Supreme Court has directly stated in Farmer. So it's enough that there's a general risk. If each defendant knew that the gang problem and the segregation policy had the effect of making the gang problems worse vis-a-vis non-gang members, they can be liable. I think I've touched on all four errors, but just to restate them. One, the district court erred in confusing the right at issue. Two, it erred in imposing a specific notice standard, which we just discussed. Third, it erred in shifting the burden of production to Ohololai when this Court's precedent of Moreno confirms it lied with the moving defendants. And fourth, it erred in disregarding the evidence submitted by Mr. Ohololai. Turning now to the sovereign immunity question, this Court has confirmed that when a State invokes the Federal court, it waives sovereign immunity. Here we would suggest that the State invoked the jurisdiction of the Federal court. Your argument is that what the State did was that it waived its sovereign immunity objection when it filed a third-party complaint under Rule 14. Is that the argument? That, among other things, yes. Among other things. What are the other things? It filed a witness list. It participated in pretrial conferences, which this Court. I want to say, you can say it. Did it do it on its own hook, or was it just one of the numerous defendants who filed documents that say defendants do X and the State's just on the list? Well, in the motion and in the complaint that it filed as a third-party plaintiff against the defendants, it listed each of the defendants as parties who were bringing the motion and who were filing the complaint. With respect to how they participated in the pretrial conferences, I can't represent having not participated in that. But we do. This is not a case where the State never raised the Eleventh Amendment defense. It specifically raised it. The only question is whether it thereafter, by its behavior, waived the defense that it had asserted. Is that correct? It did raise the immunity defense in its answer. That's correct. In its second answer, it did raise it as a defense. That said, there is this Court's jurisprudence confirms that participation in litigation. You have a case by us or in some other circuit where filing a third-party complaint is litigation behavior that waives the defense. The reason I ask that is this is different from asserting a counterclaim against the party who has sued. It's different from asserting some sort of an offset against the party who has sued. It is rather premised upon, as any Rule 14 third-party complaint is, it says, if I am liable, then the third-party defendant may be liable to me. So it's premised upon a finding of liability. Do you have a Rule 14 case that gets you where you want to get? I don't, Your Honor. But I don't think that matters, and here's why. In In re Lazar, this Court confirmed that the waiver analysis is a transactional analysis, which is consistent with the bankruptcy jurisprudence of this case, which says if a State as a debtor submits a claim as to that transaction, anybody can come against the State. So if you look at the facts that are submitted for decision, who is liable, what happened in this transaction, admitting that it will submit its question of liability to the Federal court. But it doesn't say it admits that it will. It says, as any Rule 14 motion does, I've made my defenses, but if I lose and if I'm held liable, then? That's correct, Your Honor. But recall what the sovereign immunity is. Sovereign immunity is a defense to jurisdiction from the court that is susceptible to personal waiver. The jurisdiction of the court is the right of the court to decide any fact. Here the State is saying, I'd like you to decide certain facts at some point. And the fact that it brings its third-party complaint before it moves for summary judgment suggests at that very time it's saying, I'm availing myself of the Federal jurisdiction and I'm submitting facts, a transaction for decision. If you don't then follow to the summary judgment motion and you stop there and let's say that the State raised sovereign immunity now and the court granted just unqualified immunity grounds, it couldn't then complain of a waiver of sovereign immunity. So you have to look at the facts as they arise at the time it files its third-party complaint, and at that time it's submitting the case for decision. For example, there's a Supreme Court case that's discussed in In re Blymeister. It's a case called Lapidus. I have copies of the case for the Court if you'd like to review it, where the Court holds, the Supreme Court holds that a State that sued in its State courts which removes the Federal court for the mere purpose of invoking sovereign immunity waives that immunity because it submitted a question for decision. It has invoked the Federal court for decision of its substantive rights. That's the same thing here in the third-party complaint. And then you work backwards to In re Lazar that says it's a transactional analysis. What are the facts that are submitted for decision? And here, they're the exact same facts as Mr. O'Holaly's complaint. When you add that circle together, you get a waiver of sovereign immunity. I understand the argument. I have nothing further at this time. The panel has no further questions. Why don't we hear from the other side, and then you'll have a chance to respond. Thank you. Good morning. May it please the Court. My name is Kimberly Tsumoto-Gidry, and I'm here with Gerard Lau representing defendants at police. We respectfully urge this Court to affirm for four reasons. First, there is no evidence in the record sufficient to establish a genuine issue of material fact that the officials were deliberately indifferent. That is, there is nothing to show that the officials knew or must have known of and deliberately disregarded a substantial risk of serious harm to Plaintiff O'Holaly or any other inmate's safety. Second, and only in the alternative, the officials are entitled to qualified immunity. The qualified immunity analysis is separate and distinct from the deliberate indifference analysis. Our position is that there is no genuine issue of material fact, so this Court need not apply the qualified immunity analysis. But even if the record sufficed to establish a genuine, triable issue, which it does not, the officials would still be entitled to qualified immunity. Third, the State didn't waive its Eleventh Amendment immunity. It affirmatively asserted its immunity in its answer and, again, in its motion for summary judgment. And, moreover, we point out that the State is not a person that may be subject to a Section 1983 claim under Will v. Michigan. And for this alternate reason, the claims against the State and the State officials in their official capacity should be dismissed. And, finally, the District Court properly ruled, based on this Court's established case law, that plaintiff's claims for injunctive relief are moved. So for the above reasons, we respectfully urge this Court to affirm the District Court's proper summary judgment. How do you defend the District Court's disregarding of probative evidence, maybe didn't get all the way, but before it, that supported Mr. Hololai's claim? I mean, how could the District Court, with having a pro se plaintiff in front of it, say, I'm just not going to pay attention to that evidence? Well, I respectfully disagree that the District Court just ignored that evidence. I think that the Court found that that evidence was insufficient to establish a genuine issue material fact. You have to be more precise about the evidence I'm concerned with. For example, there are a fair number of documents concerning Mr. Nesbitt. At least as I read the District Court. Right. It did not consider that evidence in its decision. Right. Am I mistaken? Right. The plaintiff did submit some statements from four other prisoners as well as the litigation and administrative documents by another inmate, Nesbitt. That's correct. But actually, all of this evidence was submitted earlier prior to the State's filing its motion for summary judgment. And in the State's motion for summary judgment, what we pointed out was that there is an absence of a genuine issue of material fact as to the official's deliberate indifference. And in its opposition papers, plaintiff did not submit any further evidence. It simply referred to the statements that I had previously mentioned that it had submitted prior. And basically at this point, there were no specific facts. The plaintiff did not meet his burden under the summary judgment standard. I think we're having a meeting of the minds about what we're talking about. Are you saying that in those circumstances, the district judge was justified in saying these statements or documents from Mr. Nesbitt are not properly before me and I don't have to consider them? Well, I think that the Court was justified in considering that the evidence was insufficient. And I do understand that. I'm not talking about quantum or weight of evidence. I'm talking about whether or not the district judge appropriately, I think, simply didn't consider the evidence. That is to say, didn't attach weight one way or the other. He said, no, that evidence I'm not considering. It's not before me. I think that's what the district judge in effect did with respect to the material from Mr. Nesbitt. Right. I mean, I do understand that the district court was silent as to the evidence that Your Honor had mentioned. I do think, though, that the – that my interpretation, my understanding is that in its silence, the district court did consider the insufficiency of the evidence. And when I say insufficiency, I mean that there's no evidence in the record that establishes a nexus between the effects of the housing policy, which is to separate gang members or to separate rival gang members and thereby to house certain gang members with non-gang members and the alleged violence that was experienced by these other prisoners, these other inmates. So, I – Excuse me. If the district judge did, in fact, consider the statements of, of course, Pauline Kimmel and Nesbitt. I think that even if the court had looked at all of the evidence in the record, there would not be sufficient evidence because, because my point is that there's, there's no evidence in the record that establishes a nexus between the effects of the housing policy and the alleged violence that was experienced by the other prisoners. There's nothing to show that these officials, that defendants knew of and deliberately disregarded a substantial risk of serious harm to, to Pauline Kimmel. Was there a letter written to the prison officials? There were in the record some letters that were written to prison officials, but again, it just doesn't establish that, that nexus. It doesn't show that the, the officials, that the defendants were deliberately indifferent. The deliberate Doesn't it create, doesn't it create a question of fact? I would, I would It would seem like it would create a question of fact. I would disagree. It doesn't create a reasonable inference. It doesn't, it doesn't create a genuine issue of material fact as to deliberate indifference. And the reason for this is because the deliberate indifference test is a subjective test, and it's based on what the officials must have known. And I think that the, the evidence, even if you look at all of the evidence which was before the district court, it, it just does not establish a genuine issue of material fact. But if you look at that evidence, it's pretty clear that people were telling them that this was happening, correct? I mean, that's what the, that's what, that's what these documents are saying. They're saying, listen, we've got a problem because you're setting up this policy whereby you have gang members who are dominating certain units, and because you're trying to separate gangs, the only people you put in with the gang members are people who aren't members of gangs, and the non-gang members are endangered. I mean, they're told this numerous times, correct? I think that what the statements show is that there are statements made by certain inmates who are allegedly non-member inmates who allege that they were attacked by gang member inmates, but what it doesn't show is that the reason they were attacked is because they were non-gang member inmates, and they were attacked because, because of their non-member status. You know, I think you're reading those things a little bit too finely. I think you read those things, and it's perfectly apparent what's being said. Now, it may or may not be sufficient to prove liability at the level of deliberate indifference, but what those documents are saying is we are in danger because we are non-gang members put into a unit that is dominated by a gang. I mean, that's what they say. And the prison officials could say, well, yeah, but our other choices are worse, or the danger to you is not so great as we need to worry about it. I mean, they may have various responses, but what they're being told is pretty plain. But I think that I would still disagree because I think that these statements just don't establish that connection. They don't say, for example, that the reason why these other inmates were attacked was because they had some kind of other type of conflict with other people, other inmates that just happened to be gang members. It doesn't make that causal connection that the reason they were attacked is because they were gang members and because of their non-gang members and because of their non-gang member status. Now, maybe I should say it this way. Maybe I should say it this way, that at a minimum, these things are saying that non-gang members placed in a situation where they are imprisoned in a unit where a gang is dominant, they are in particular danger from gang members because of the dominance of the gang. I don't think they even say that. I respectfully disagree that that's what the statements show. I just don't. Now, show is different from say. You don't even think they say that? I don't think that a reasonable inference can be drawn. I don't think that. A reasonable inference that that's what they say? Well, I think that you could. I just don't think that this evidence provides specific facts, that even if potentially you could read these statements in many different ways, I don't think that under the summary judgment standard, they provide the specific facts that you need to draw a reasonable inference that the officials were deliberately indifferent. That's a different question than the one I was asking you, but I understand. And you may be right on that one, but that's a different. You gave me answer. You answered a different question than the one I asked. Right. I think that the statements, whatever they say, is, as I said, insufficient to prove the issue here or to meet the summary judgment standard. If I may just point out, too, two of the four inmates that were housed that provided statements, Nesbitt and Kodes, they were housed in an entirely separate high security facility at Halava. Plaintiff Ahaleli was housed in the Halava medium security facility. And I think that this is directly relevant, because Nesbitt and Kodes were housed with an entirely separate group of high security inmates. Right. That would go to the weight of it. Okay, you may have the problem in the high security unit. You may not have the problem in the medium security unit. I understand that. I guess I would also like to point out that, as I mentioned before, the deliberate indifference test is a subjective test, and this means that the court must look at what the officials actually knew, not what a reasonable official would have known or even what the officials should have known from the facts. And this is the deliberate indifference test that was established under Farmer versus Brennan. And, again, just going back to our burden under summary judgment, on summary judgment, it's the moving party's, its defendant's, burden to establish the absence of a genuine issue of material fact. But under Celotex, this doesn't mean that defendants, the moving party has to negate its opponent's allegations. And I think it's clear from the record that the defendants met our burden under the summary judgment standard, and plaintiff did not meet its burden to show specific facts, to establish a genuine issue of material fact, that the officials were deliberately indifferent. Sotomayor, given that during the litigation period Mr. Hololai was incarcerated and given that he was representing himself, does that suggest any appropriate course of action as to what we ought to do now, now that he's out? I have to say, I'm speaking only for myself. I'm reluctant on this record simply to reverse the summary judgment, particularly so because it's unclear to me, to state it in the most mild way, that the district judge even considered the evidence that Mr. Hololai sought to proffer. And I would be very uncomfortable in evaluating the evidence before the district judge had a chance to do so. What would be your response to a remand from this Court instructing the district judge to allow Mr. Hololai to get all that evidence into whatever form would satisfy the district judge, and perhaps now that he's no longer incarcerated, to seek counsel? I would say that I think that that, at this point, would be unnecessary because what we would urge, we would urge this Court to affirm the district court's decision, but because even though plaintiff was pro se, he still had to meet his burden under the summary judgment standard, which he did not. He did not show specific facts to establish a genuine triable issue. But I think that if it were between reversal and remanding, we would prefer a remand at that point, although we do stick to our position that we feel that reversal or remand is not necessary. Okay. Could we talk about the sovereign immunity issue for a minute? The third-party complaint that the State filed could, I should think, have been worded in such a way as to carve out sovereign immunity and yet say that the individual defendants need to assert a third-party claim, as opposed to what is apparently there, which is an open-ended, the State and everybody else in all capacities filed a third-party complaint. Am I understanding what happened correctly here? Right. Or is there something in the third-party complaint that you think carves out the ---- No. I do agree that the third-party complaint could perhaps have been more artfully worded and could have made a more clear distinction that the State was preserving its Eleventh Amendment immunity. But in this case ---- Was that the intention? Well, in this case, what happened is that the State participated in the motion for caution. It was still a party to this case, and it wanted to preserve it, to protect itself. The State had not yet been dismissed from the lawsuit. And also, it was under a deadline. It was given a deadline. The defendants were given a deadline by the District Court of August 2, 2005, for filing its motion for leave to file a third-party complaint. And it filed that motion on that day. But I do want to point out that it's very difficult for the State to waive its Eleventh Amendment immunity. And in this case, it's really clear that the State did not waive its immunity. It affirmatively asserted its immunity in its answer and, again, in its motion for summary judgment. It did not participate in any sort of extensive pretrial litigation that would show that it was waiving its immunity. I'm looking for a copy of the third-party complaint. Is it in the excerpt? It's in one of the supplements. It's the first document.  Hang on. Supplement. Yes. And what page is that? It can be found at supplemental excerpts of record at tab 32. Oh, hang on. I've got it. Okay. It's a motion for leave to file a third-party complaint. And is the complaint attached? If you're looking at the original excerpt, it's not in the original excerpt of the record. It's in the supplement. May I have it? Please. Thank you. Thank you. Okay, thank you. You can pick it up later if you want or now if you like. I'm sorry to interrupt. I see that my time is running out. So if your honors have no further questions. Any further questions from the bench? I think not. Thank you. Thank you. The majority of my time discussing our agreement that deliberate indifference liability is a subjective test. But let me return to that in a moment and instead answer a question that was posed at the end regarding the State's motives in filing the complaint and whether that had any relevance. Under Lapidus, which is a case that is not in the briefs. It's discussed in Blymeister. I have copies for everyone. Justice Breyer writing for the Court addressing the question of waiver held, a benign motive, however, cannot make the critical difference for which Georgia hopes. Motives are difficult to evaluate, while jurisdictional rules should be clear. What Justice Breyer went on to hold is that removal of a case from State court to Federal court, invoking the Federal court's jurisdiction, availed itself and waived sovereign immunity. So whatever the State wanted to do, whatever it intended to do, the fact is that the State itself in paragraph one of the complaint says, I, the State, am coming before you, the Federal court, asking for you to decide a specific legal question. I'm availing myself. And that question extends to the transaction, the facts underlying that dispute. And in so doing, it waived sovereign immunity as to the totality. I'm happy to provide the Court with copies of the case, but it gets back to a different Was the Lapidus case decided before or after Alden? The Lapidus case was decided in 2002, and you're testing my memory on Alden. But I took Federal courts in 2003, and Alden was in the supplement, so my guess is, is that they'd be on parallel tracks. But addressing Alden, Alden only has to do with the case. And from whom did you take Federal courts? Martha Field. Terrific. She knows Eleventh Amendment law. That's true. But here's an interesting point, and it's an important point, because it gets to 1983 liability for the State in sovereign immunity in this way, which the State raised early in its argument. Alden may have dealt with a State's sovereign liability in its own courts, whereas here, Lapidus deals with sovereign immunity waivers in Federal courts, availing himself of the Federal jurisdiction, and says, all right, Federal court, decide the case. That said, we must, it must be admitted, still have a cause of action that we can proceed or supplement jurisdiction. So the sovereign immunity question itself is also tied to the qualified immunity question. And in remanding, you haven't done enough. You also have to reverse the sovereign immunity question. You can remand as a qualified immunity, but you must also address sovereign immunity. And that requires reversal, not remand. That's a legal question, not a factual question. Lastly, I wanted to go back to where I thought I was going to spend the bulk of this time. We agree that it's a subjective test for deliberate indifference liability. But Farmer and this Court's opinions in Robinson and a number of other cases confirm that subjective knowledge can be proven by circumstantial evidence. Here, the circumstantial evidence is correspondent between defendants or, excuse me, between defendants and various prisoners addressing the very issue underlying Mr. Oholai's complaint. Therefore, you can impute or infer knowledge from that circumstantial evidence. And Farmer allows you to go one step further. Farmer says if the question is a question of obviousness, which can be raised by the repetitiveness of the attacks, which was done in Robinson and this Court's jurisprudence, that's enough to go through for a case to proceed to trial. Here, there were repeated tracks and there was evidence to defendants putting them on specific notice. We would urge that under Goodale and a number of other cases, remand is unnecessary for a question of propriety. And I think this Court, reviewing DeNovo, can say we look at this evidence, we think it raises a question of fact, reversed, go forward. If there are no other questions. Roberts. Thank you very much. Thank both sides for your argument. One other thing. Would you like a copy of the Lapidus case? No, no, thank you. Federal judiciary is under certain budgetary constraints, but we do still have case reporters. Thank you. Thank both sides for their useful argument. And the case is now submitted for decision. And we're in adjournment for the day. And Judge Hugg, we'll see you inside. Thank you. Thank you. Thank you. Thank you.
judges: Hug, W. Fletcher, Holland